## GREEN  *v.*  THE  HUDSON  RIVER  RAILROAD COMPANY.

### June, 1866.

#### Affirming 28 *Barb.* 9.*

An action cannot be maintained by a husband, as such, for damages to himself by being deprived of the society and assistance of his wife, resulting from her death, caused by the defendants' negligence.

No such action could be maintained at common law, and the statute (*L.* 1847, 575, c. 450 ; same act, 2 *R. S.* 292), gives an action only to the personal representatives of the deceased, for the benefit of the widow and next of kin, and not to the husband, where the deceased wife could have maintained an action in conjunction with her husband, for an injury to her, if .death had not ensued.†

Charles H. Green sued the Hudson River Railroad Company, to recover damages for the instantaneous killing of his wife by the negligence of the defendant.

The facts are stated in the opinion. The complaint alleged that the plaintiff was the husband of Eliza Green ; that, on January 9, 1856, the said Eliza was a passenger on the train of the defendants' cars, proceeding from Albany to New York ; that, by the gross carelessness and unskillfulness of the agents of the defendants, a collision occurred, by means of which the said Eliza was then and there killed, " whereby the plaintiff has lost and been deprived of all the comfort, benefit and assistance of his said wife in his domestic affairs, which he might and otherwise would have had, to his damage," &c.    The defendants demurred to this complaint, as not containing facts sufficient to constitute a cause of action.

On the demurrer the defendants had judgment.

* In June, 1858, an action by the husband, *as administrator* of his wife, was held sustainable ; the opinion being rendered by the same judge who delivered the opinion in 28 *Barb.* 9, and the decision was affirmed on appeal to the general term ; and the plaintiff recovered a verdict, which, however, was set aside on other grounds, and a new trial ordered in 32 *Id.* 25.    The forms of complaint and demurrer are in 16 *How. Pr.* 263.

† By 1 *L.* 1870, 215, c. 78, § 2, the statute is amended so as to allow an action by the personal representatives of the deceased, for the benefit of the *husband* or widow and next of kin.

*The supreme court,* at general term, affirmed the judgment on the same grounds as are assigned by this court. Reported in 28 *Barb.* 9. Plaintiff appealed to this court.

*Morris S. Miller,* for plaintiff, appellant;—Insisted that the American cases against the action were based on 1 *Cush.* 475; and Bolton *v.* Baker, 1 *Campb.* 463, which was unsound.

*Thomas M. North,* for defendants, respondents.

LEONARD, J.—This case involves but a single proposition. It is whether an action can be maintained by a husband for damages arising from the instantaneous killing of his wife by the negligence of the defendants.

The case comes up on demurrer to the complaint, for not stating facts sufficient to constitute a cause of action.

The complaint states, that the wife became a passenger on the defendants' cars; the legal obligation to carry her safely; that she was killed, while a passenger, by the carelessness of the agents of the company, whereby the plaintiff lost the comfort and assistance of his wife in his domestic affairs, which he would otherwise have had, to his damage of fifteen thousand dollars.

The rule at common law is well settled that no damages can be recovered by action for injuries resulting in immediate death. Actions for injuries to the person abate, by the common law, by death, and cannot be revived or maintained by the executor, administrator, or heir of the deceased.

The plaintiff claims a distinction, that his action is not brought for the injuries sustained by his wife, but for his own loss, by being deprived of her society and assistance; something in the nature of the injury sustained by the husband in actions for *crim. con.*

The rule is different, however. It may be remarked, also, that in the latter case, the wife being alive, there is a certainty that the husband might, but for the act of the seducer, have continued to enjoy her society. It is of no practical utility to search for the reason of the rule. It remains somewhat obscure. Whether it arose from the sentimental reason, that the destruc-

tion of life by negligence was an injury that could not be compensated in damages, as suggested by a learned judge, Baron PARKER, in an English case, or from the policy of the law to secure a greater safety to life and limbs by merging or drowning the right to damages by a civil action in the felony resulting from the killing of a human being by the negligent act of another, thus insuring the co-operation of the next of kin, as may be supposed, in a vigorous prosecution of the criminal, and preventing the composition or settlement of such offenses, as I am inclined to believe, it is now of little consequence to inquire. It is sufficient that the rule is settled so firmly that courts would travel beyond their province into the boundaries of legislation by any attempt to alter it, or to create, by their decision, causes of action not before known.

The parent cannot, at common law, recover for the loss of the services of his child, nor the wife or child for the loss of the care, support and nurture of the husband or father where his death has been brought about by the act of another, whether negligent or willful. The loss in each of these cases is of the same character as that sustained by the plaintiff. These are injuries for which the law formerly afforded no redress in damages. Recently the legislature have intervened by enactment in this State, and in several other States of the Union, and also in Great Britain, and the common law rule has been modified so as to give a right of action for the benefit of the wife and next of kin of the deceased by the personal representatives where the party injured might have recovered damages in respect thereof, if death had not ensued. *L.* 1847, c. 450, amended *L.* 1849, c. 388, 256; 2 *R. S.* 292. This modification does not extend to giving a right of action to the husband, where his deceased wife could have maintained an action in conjunction with her husband, for an injury to her, if death had not ensued. The husband must wait till legislative wisdom has modified the rule of law in his favor, too, before he can maintain such an action as the present one. .

But two cases can be found in the reports of decisions in this State, giving the slightest authority for bringing this action, and those, as reported, will not be found, on a critical examination, at variance with the former current of authority, or

Green *v.* Hudson River R. R. Co.

will be found to be remarks not called for by the case then before the court. The first is the case of Ford *v.* Monroe, 20 *Wend.* 210. It appears from the facts as reported, that the plaintiff recovered for the loss of the services of his son, a child of ten years, killed by the negligence of the defendant's servant in driving a gig. There appears to have been no question raised or considered in respect to the cause of action, except only as to the proof of the relation of master and servant existing at the time, and the allegation of special damage in the declaration, and the proof of the direct consequential relation of the damage to the act complained of. The small amount of the recovery, only two hundred dollars, might lead to the inference that the recovery was for the expenses of interment, or that some care and expense were bestowed in an attempt to recover the child. The charge of the judge, that the plaintiff would be entitled to recover for the services of the child till he became twenty-one years of age, if the act was caused by the negligence of the servant, leads to the inference that the recovery was upon a ground analogous to that urged in the case at bar. It does not appear that any exception was taken to the charge, or that it was made the ground of the application for a new trial, and the subject is not referred to in the opinion of the court in the most distant manner.

BRONSON, J., who was one of the judges in the case of Ford *v.* Monroe, says, in the subsequent case of Pack *v.* Mayor, &c. of N. Y., 3 *N. Y.* 489, 493, where the court below had charged that the plaintiff could recover for the probable pecuniary profit of his child's services, until he became of age, the child having survived the injury an hour and a half, that he has " a strong impression that the father could recover nothing on account of the injury to the child, beyond the physician's bill and funeral expenses," citing *Reeve Dom. Rel.,* and Ford *v.* Monroe, as authority for the position. Unless the memory of Judge BRONSON served him for something not to be found in the report of the case of Ford *v.* Monroe, he would hardly have referred to it as authority for the position stated in Pack *v.* Mayor. The other case cited by the plaintiff's counsel, from the reports of this State, is that of Lynch *v.* Davis, a decision of the special term of the supreme court, reported in 12 *How. Pr.* 323.

That action was brought by the plaintiff, as the administrator of his wife, against the defendant for causing her death by malpractice as a physician. The defendant demurred to the complaint, and the court very properly sustained it. The action appears to have been brought under the act of 1847, which gives an action to the personal representatives of the person injured and dying, when the injured person, if living, might have maintained an action. The judge says that the action would have been the husband's had she lived, though she, being the meritorious cause, must have been joined.

The whole authority of the case is that the statute does not give an action to the personal representatives of a married woman against any person for wrongfully causing her death.

The judge also states as a fact within his own knowledge outside of the case before him, that the plaintiff had brought an action in his own behalf, founded on the breach of the defendant's obligation under his employment as a physician, for the damages sustained by reason of the loss of the society and aid of his wife, and had recovered such damages as a jury thought fit to award him. The particulars of that other action are not stated. It is highly probable that the death of the wife was not instantanious, and that the husband had bestowed his care, and incurred expense, as well as sustained the loss of her society and aid, during the time she survived after the commission of the acts of malpractice which caused her death, so that a technical right of action existed for the recovery of damages by the husband in his own right. It would then have been in the power of the jury to have measured the damages very liberally in such a case without violating any rule of law. The dicta of the judge can be explained only upon the theory suggested:

" The judge says in that case, *obiter,* that the common law gave the husband and the father a right to recover of the wrong-doer the pecuniary injury he had sustained by reason of the killing of his wife or child. The husband had availed himself of this right of action, in this very case, to recover damages for the loss of his wife. The object of the act of 1847 was to extend the same rule to the wife and child, so that they also

might recover the pecuniary damages they had sustained by the wrongful killing of the husband or father."

The learned judge cites no authority for the rule of the common law as stated by him, and I think he would be unable to find it laid down to that extent. He is, I think, also under some error in respect to the object of the act of 1847. The purpose of that act was to give a right of action where none existed before on account of the death of the person injured. It was to remove the disability arising from the common law rule that personal actions died with the person.

The English act giving the same remedy as that contained in our act of 1847, enacted in the parliament of Great Britain, August 26, 1846, a few months only prior to the adoption of the act by the legislature of this State, recites the rule of the common law thereby modified in these words, viz: "Whereas no action at law is now maintainable against a person who by his wrongful act, neglect or default, may have caused the death of another person, and it is sometimes right and expedient that the wrong-doer in such case should be answerable in damages for the injury so caused by him;" thus stating the mischief and the remedy intended.

The two cases referred to are not authority for the principles invoked by the plaintiff, which are necessary to sustain his action, except in a very inferential and doubtful manner.

At all events they cannot overthrow the rule of the common law before stated, and which may be found more fully in the following authorities: _Tayl. Exr._ 436; Whitford v. Panama R. R. Co., 23 _N. Y._ 465, 476; Oldfield v. N. Y. & Harlem R. R. Co., 14 _N. Y._ 310, 416; _Sedgw. on Dam._ 551 (marginal).

The subject was very fully and learnedly considered by Justice BACON, when this case was before him at special term, in an opinion afterward adopted at the general term on appeal and now reported in 28 _Barb._ 9. The case required no further discussion than is so well and carefully given in 28 _Barbour_, and I am conscious of having added very little to the subject, although I have examined it at some length.

The judgment should be affirmed, with costs.

HUNT, J. [After reciting the pleadings as above.]—The

Green *v.* Hudson River R. R. Co.

plaintiff bases his claim upon the legal idea that he was entitled to the services of his wife during her life, and that the defendants, by carelessly and illegally shortening her life, destroyed the value of such services, and that he thereby suffered a pecuniary damage. The husband is, by the common law, entitled to the services of his wife for his own pecuniary benefit. He may sue for and recover the value of her labor, as a debt due to him, in the same manner that a father is entitled to the services of his minor child, and may demand and is entitled to receive her wages or the value of her labor in whatever form it may be presented. That this is the rule, unless such demand is limited to the life of the wife, and is destroyed by her death, is not denied.

The plaintiff cites in his favor, Cross *v.* Guthry, 2 *Root*, 90, decided in the superior court of Connecticut, in 1794. The plaintiff alleged in that case that he had employed the defendant to perform a surgical operation upon his wife, the defendant being a surgeon, and declaring himself competent, well and skilfully to perform the operation; that the operation was performed so ignorantly, negligently and unskillfully, that the wife died in a few hours thereafter. He further alleged that he had thereby been put to great cost and expense, and deprived of the service, company and counselship of his wife, and claimed damages to one hundred pounds. The jury found for the plaintiff forty pounds; and, on appeal, the court sustained the verdict, saying that the rule urged by the defendant, that the private injury was merged by the death of the wife in the public offense, was applicable only to capital crimes, where, from necessity, the offender must go unpunished or the injured individual go unredressed.

The plaintiff also cites Plummer *v.* Webb, *Ware*, 75, in which the plaintiff sought to recover damages for the death of his minor son, caused by the cruel and illegal treatment of the defendant. This case was decided against the plaintiff on the ground that at the time of the death of the son, the defendant, as captain of the ship, and not the father, was entitled to his services. The learned judge discusses the principle under consideration, and argues at length in favor of the right to recover in such cases. As it was expressly decided, however, on the

ground mentioned, this can hardly be considered an authority in favor of the plaintiff.

Ford v. Monroe, 20 Wend. 210, was an action brought by a father to recover damages arising from the killing of his child by the negligence of the defendant's servant. The judge, at the circuit, charged the jury that the plaintiff was entitled to recover such sum by way of damages as they should be of opinion the services of the child would have been worth to him until he became twenty-one years of age. The case was carried to the supreme court, and the verdict of two hundred dollars in favor of the plaintiff was sustained. This case has been much criticised in the New England authorities, and it is certainly quite remarkable that neither the counsel nor the court allude to the question now before us. The only point discussed was the authority of the servant.

Lynch v. Davis was a special term decision (12 How. Pr. 323), in which the plaintiff brought an action as administrator, under the law of 1847 (L. 1847, 575, c. 450), to recover damages for the death of his wife. On demurrer to the complaint, the court held the demurrer well taken, and dismissed the complaint. In his general discussion of the case, the judge states that the action could be maintained by the husband in his individual character. As the case was, however, decided on another point, and the question now before us did not there necessarily come up, it cannot be considered as an authority in favor of the plaintiff.

The plaintiff's case rests, therefore, on the authority of Cross v. Guthry, with such aid as it may derive from Ford v. Monroe.

The plaintiff's position cannot be maintained against the array of authorities and dicta which the defendants have massed against it. I will refer to a portion of them only.

In Higgins v. Butcher, Yelv. 89, the court held that "if one beat the servant of J. S. so that he die of the beating, the master shall not have an action against the other for the battery and loss of service; because, the servant dying of the beating, it is a felony, and this has drowned the particular offense, and prevails over the wrong done to the master, and his action by that is gone." The decision is in point, although the reason given is not now a sound one.

Baker v. Bolton, 4 *Campb.* 493, decided in 1808. The plaintiff's wife was thrown from the top of a stage-coach, by the negligence of the defendant, and so badly injured that she died in about a month. The action was to recover damages for being " deprived of the comfort, fellowship and assistance of his wife." It appeared in the case that the plaintiff was a publican, and that the wife was of good use to him in his business. Lord ELLENBOROUGH held that he could only recover damages for the loss from the time of the injury till the death ; that "in a civil court the death of a human being could not be complained of as an injury, and in this case, the damages as to the plaintiff's wife must stop with the period of her existence."

In Carey v. Berkshire Railroad Co., 1 *Cush.* 475, A. D. 1848, the plaintiff's child was instantly killed by the carelessness of the defendant's servant, and the father brought his action to recover damages for his loss of service. The court declared the common law to be decisive against the action. In relation to Ford v. Monroe, the court say, " that no question was then raised concerning the legal right of the plaintiff to recover damages caused by the killing of his son. For aught that appears in the report that point was assumed, and passed *sub silentio* both at the trial and in the bank."

In Lucas v. N. Y. Central R. R., 21 *Barb.* 245, A. D. 1855, the general term of the sixth district held distinctly, " that the instant killing of the plaintiff's wife by the careless act of the defendant, cannot give the plaintiff an action for the loss of her services. Death following instantly upon the act complained of, there was no time during her life when it could be said that the husband had lost the services of his wife in consequence of the injury complained of."

The question is discussed and the same principles laid down in Nickerson v. Harriman, 38 *Me.* 277, A. D. 1854, and in Connecticut Mut. Life Ins. Co. v. N. Y. & New Haven R. R. Co., 25 *Conn.* 265, A. D. 1856, but the cases were in part at least decided on other points.

The principle in opposition to the plaintiff's right of recovery is laid down in *Smith's Master and Servant*, 85, 75 *Law Library*, citing older cases.

The same view of the question has been repeatedly announced
by the different judges of this court, although the question has
never been distinctly presented or formally decided until the
present case.    It was so stated by Davies, J., in Whitford *v.*
Panama R. R. Co., 23 *N. Y.* 465, 475, 476, and by Comstock,
J., in the same case, *Id.* 484, 485 ; and again by the latter
judge in Quin *v.* Moore, 15 *N. Y.* 432, 436.    The same rule
was laid down by Wright, J., in Oldfield *v.* N. Y. & Harlem
R. R. Co., 14 *N. Y.* 310, 316, and by Bronson, J., in Pack *v.*
Mayor of N. Y., 3 *N. Y.* 489, 493.    The same rule has also
been laid down by Bosworth, Hogeboom, Sutherland,
Woodruff, Ingraham and Hoffman, JJ. ; but it is scarcely
necessary to multiply this class of references, where the case
was not decided upon the precise proposition now in ques-
tion.

In many elementary authorities cited by the defendant, the
principle of " *actio personalis moritur cum persona* " is laid
down, and in 1 *Williams on Executors,* p. 668, the principle is
broadly stated thus : "If an injury was done either to the per-
son or property of another, for which damages only could be
recovered in satisfaction, the action died, with the person *to*
whom or *by* whom the wrong was inflicted." That principle,
in my judgment, does not touch the present class of cases.    In
its legal aspect, the injury here complained of was done to the
plaintiff, and not to his deceased wife.    The claim is for com-
pensation for injury to his rights, and not to hers.    Should her
executors bring their action to recover damages for the pain
and anguish suffered by her from the cause alleged, the prin-
ciple of *actio personalis* would find its proper application.    It
is not applicable to the action of the present plaintiff, in which
the party alleged to be injured, and the party inflicting the in-
jury, are still in existence.    It is the subject matter of the
injury, merely, which has ceased to exist.

If the rule of the common law is harsh or narrow, it is for
the legislature to alleviate the evil, and enlarge the remedy.
This has been done in some degree in this State, and in Great
Britain much more extensively by the act 9 and 10 Victoria,
ch. 93.    However strong may be our sympathy with the plain-
tiff, we are compelled to content ourselves with expounding the

law as we find it. The right to correct or improve it belongs to another department of the government.

Judgment affirmed, with costs.